# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY WOODS and SUSAN WOODS, individually, and as husband and wife, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>-vs- )<br>)<br>DR PEPPER SNAPPLE GROUP, INC., a foreign corporation, et al., )<br>)<br>Defendants. ) | Case No. CIV-19-1162-F<br><br>(District Court of Cleveland County, Case No. CJ-2019-1549) |

## ORDER

Three motions are before the court, all related to plaintiffs' motion to remand. This order addresses the motions in the following sequence.

-- "Defendant The American Bottling Company's Motion to Strike Plaintiffs' Affidavits of Non-Service[1] Referenced in Motion to Remand and in Plaintiffs' Response in Opposition to Defendants' 12(b)(5) Motion to Quash Service on Defendant Lupp" (doc. no. 42); response brief (doc. no. 44). No reply brief was filed.

-- "Plaintiffs Timothy and Susan Woods' Motion to Remand" (doc. no. 33); response brief (doc. no. 40); reply brief (doc. no. 50).

---

[1] Only one of the challenged affidavits is entitled an affidavit of "non-service." The other is entitled an affidavit of "service." *See*, doc. nos. 33-5, 33-6.

-- "Defendants' 12(b)(5) Motion to Quash Service for Insufficient Service of Process for Defendant Lupp" (doc. no. 25) and supplement (doc no. 27); response brief (doc. no. 38); reply brief (doc. no. 43).

For the reasons stated below, the motion to strike will be denied, the motion to remand will be granted, and the motion to quash will be stricken as moot.

## Issue

The primary issue is whether this action should be remanded under 28 U.S.C. § 1447(c). Plaintiffs argue remand is required because this action was improperly removed in violation of the forum defendant rule set out in 28 U.S.C. §1441(b)(2).

An improper removal based on the forum defendant rule is not a jurisdictional defect[2] and must be raised in a timely manner to avoid waiver. Brazell v. Waite, 525 Fed. Appx. 878, 884 (10th Cir. 2013), unpublished. Plaintiffs' motion to remand is timely, so the issue is timely raised and plaintiffs have not waived it.

## Standards

Removal statutes are strictly construed, and all doubts are resolved against removal. Fajen v. Foundation Reserve Ins. Co., Inc., 683 F.2d 331, 333 (10th Cir. 1982), citations omitted. A party that invokes federal jurisdiction, as The American Bottling Company (TABC) has done here, bears the burden of proof because the presumption is against federal jurisdiction. Miera v. Diaryland Ins. Co., 143 F.3d 1337, 1339 (10th Cir. 1998); Snyder v. Moore, 2014 WL 11032956, *2 (W.D. Okla. 2014) (presumption is against removal, citing Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995)).

---

[2] Because failure to comply with the forum defendant rule is not a jurisdictional defect, there is no appellate review of a remand order based on failure to comply with that rule. 28 U.S.C. § 1447(d); Holmstrom v. Peterson, 492 F.3d 833, 838 (7th Cir. 2007), cited with approval in City of Albuquerque v. Soto Enterprises, Inc., 864 F.3d 1089, 1097 (10th Cir. 2017).

Background

This action arises out of a multi-vehicle collision on Interstate 40 in Oklahoma City. The petition was filed in state court on December 2, 2019. Doc. no. 1-1. It alleges that defendant Jeffrey Lupp was operating a tractor-trailer which "negligently slammed" into the rear of the plaintiffs' vehicle, forcing it into the vehicle in front of plaintiffs and causing serious and permanent injuries. *Id*. at ¶¶10, 19. The petition alleges that the other defendants are either owners or insurers of the tractor-trailer. *Id*. at ¶¶ 3-6.

On December 13, 2019, defendant TABC, a non-forum defendant which had been served by that date,[3] removed this action based on diversity of citizenship. Doc. no. 1, p.1.[4] The removal notice asserts there is complete diversity between the plaintiffs (who are alleged to be citizens of Kansas) and the defendants (alleged to be citizens of a number of specific states identified in the notice of removal, all of which are states other than Kansas).[5] *Id*. at pp. 3-5 (diversity allegations). The notice of removal states, however, that defendant Lupp, the driver of the tractor-trailer, is a citizen of Oklahoma (*id.* at p. 5), a fact which is not in dispute.

Discussion

Mr. Lupp's citizenship is critical to the motion to remand because 28 U.S.C. § 1441(b)(2) provides that a civil action which is otherwise removable based on

---

[3] *See*, doc. no. 33-3 (certified letter to TABC's counsel).

[4] This order uses the electronic case filing (ecf) page numbers which appear at the top of filed documents.

[5] With respect to defendant American International Group, the removal notice states this defendant is not an identifiable legal entity, has not been served, and should not be considered for purposes of diversity. The removal notice states that if American International Group were to be considered, it would not be a citizen of either Kansas (plaintiffs' state of citizenship) or Oklahoma (forum state). Doc. no. 1, p. 4.

3

diversity may not be removed if any of the parties in interest "properly joined and served as a defendant" is a citizen of the state in which such action is brought (the forum defendant rule). In an effort to address the forum defendant rule, TABC states in its removal notice that plaintiffs had not properly joined and served Mr. Lupp (at the time of removal). As a result, TABC argues that Mr. Lupp's presence in this action did not prohibit removal under §1441(b)(2). Plaintiffs disagree and move to remand, asserting a judicially crafted exception to the "properly joined and served" language of §1441(b)(2). Plaintiffs argue the exception applies if they did not have a reasonable opportunity to serve the forum defendant prior to removal.

This order will address the nature and purpose of the exception argued for by plaintiffs. After that, it will determine whether the exception applies in the circumstances of this case.

Flandro v. Chevron Pipe Line Co., 2019 WL 1574811, **5-7 (D. Utah 2019), states that where the forum defendant is not a sham party, and where a defendant removes before plaintiff has had a reasonable opportunity to serve the forum defendant, "courts do not countenance the absurd results" which would flow from the "properly joined and served" language of § 1441(b)(2). *Id.* at *6. To avoid an absurd result, courts apply an exception to that language. Flandro observes that the forum defendant in that case was a bonafide defendant upon whom plaintiffs had clearly attempted to effect service "a mere five days after filing the complaint," and that Chevron had removed the action only "eleven days after it was filed." *Id.* at *7. Given that situation (a situation very similar to the material sequence of events in the present case), the court reasoned that the facts fell "squarely in the 'absurd result' line of cases." *Id.* Accordingly, the court stated that it "will not mechanically apply the plain language [of §1441(b)(2)] to countenance an outcome that is directly

4

at odds with the purpose of §1441(b)(2)," and it granted plaintiffs' motion to remand. *Id*.

The exception was also addressed by Judge Leonard in Snyder, *supra* at *2, quoting Lone Mountain Ranch, LLC v. Santa Fe Gold Corp., 988 F. Supp.2d 1263, 1266-67 (D. New Mex. 2013). As explained in Snyder, the reduction of bias against out-of-state citizens (the genesis of diversity jurisdiction) which is generated by a forum defendant's participation in a case, is present whether the forum defendant is served before or shortly after the matter is removed. Snyder, *supra* at *2, quoting Lone Mountain Ranch at *2. Moreover, the purpose of the "properly joined and served" language found in § 1441(b)(2) is to prevent plaintiffs from adding a forum defendant solely to defeat removal, *i.e.* to prevent fraudulent joinder. *Id*. Therefore, it makes no sense for Congress to enact the "properly joined and served" language in order to prevent gamesmanship on the part of a plaintiff only to have that language allow for a different type of gamesmanship by a defendant, such as hasty removal in order to avoid the forum defendant rule. *Id*. Based on this understanding of the exception, Judge Leonard ruled that although the removing defendant won the race to remove before the forum defendant was served, the removal violated the forum defendant rule.[6] Snyder at *2. The removing defendant had not carried its burden to demonstrate the removal was proper, and the case was remanded. *Id*. at *2.

TABC concedes there is an exception to the "properly joined and served" language of §1441(b)(2) and further concedes that the exception applies when removal would create an absurd or bizarre result. As TABC states in its response

---

[6] The facts of Snyder were quite different from the facts of the present case. In Snyder, plaintiff's counsel, at defense counsel's request, held off serving defendants over the Thanksgiving holiday and waited for word as to whether defendants would permit counsel to accept service on their behalf. Three days after the end of the holiday weekend, Progressive removed the case.

brief (doc. no. 40, p. 11): "This analysis [*i.e.* the general proposition that the non-forum defendant must remove before the forum defendant is served] holds true <u>unless removal creates an 'absurd or bizarre result,'</u>" quoting <u>Howard v. Crossland Construction Co., Inc.</u>, 2018 WL 2463099 (N.D. Okla. June 1, 2018), emphasis added.

<u>Howard</u>, the case cited by TABC, makes clear that although remand was denied in that case, its facts did not bring it within the exception that prohibits a defendant from making a snap removal before plaintiff has had a reasonable opportunity to serve the forum defendant.[7] 2018 WL 2463099 at *3. Thus, although TABC correctly cites <u>Howard</u> as a ruling which recognizes there is a split of authority over whether to apply the plain language of §1441(b)(2) when determining whether to consider or ignore a forum defendant who has not been served at the time of removal, <u>Howard</u> is also a case which recognizes the specific exception relied upon by the plaintiffs here.

This court concludes there is a judicially crafted exception to the "properly joined and served language" of § 1441(b)(2), and that the exception applies if plaintiffs did not have a reasonable opportunity to serve Mr. Lupp before TABC removed this action.

To show that they did not have a reasonable opportunity to serve Mr. Lupp prior to TABC's removal of this action eleven days after it was filed in state court,

---

[7] In <u>Howard</u>, defendant Crossland waited twenty-seven days to remove the case. 2018 WL 2463099 at *3. Thus, plaintiffs had ample time to serve the forum defendant, Moudy, prior to removal. *Id*. Almost nine months after the case was removed, plaintiffs still had not indicated to the court that they had served Moudy. *Id*. Nor had plaintiffs made any representations regarding their efforts to do so other than stating "they plan to serve him." *Id*.

plaintiffs submit evidence including two affidavits from process server Phil Gay II.[8] Doc. nos. 33-5 (affidavit signed December 30, 2019), 33-6 (affidavit signed January 10, 2020). The next step is to determine whether these affidavits may be considered or whether they should be stricken in their entirety as requested in TABC's motion to strike.

TABC makes two arguments for striking Mr. Gay's affidavits, both of which are rejected. First, TABC argues the affidavits do not state that they are made with personal knowledge of the matters they set forth. There is, however, no requirement that affidavits include a *per se* statement that the affiant has personal knowledge of the facts described in the affidavit. Furthermore, read as a whole, the affidavits include details which indicate Mr. Gay had personal knowledge of the matters described. Second, TABC argues the affidavits include speculation. TABC focuses on Mr. Gay's statement in the December 30, 2019 affidavit, that: "At this point [*i.e.* when service was unsuccessfully attempted on December 13, 2019] we believe the respondent was evading service." Doc. no. 33-5. The challenged passage is merely a statement of Mr. Gay's personal belief. Details set forth in the same affidavit provide some support for that belief. Furthermore, despite the fact that TABC and Mr. Lupp share the same counsel, TABC presents no evidence to explain where Mr. Lupp was at the times of attempted service described in the affidavit. Nevertheless, the court will disregard Mr. Gay's statement that he came to believe Mr. Lupp was evading service. It does so primarily because there is no need to determine the evasion issue. In any event, the fact that an affidavit includes immaterial information or beliefs is not a reason to strike the affidavit in its entirety.

---

[8] The signature lines include what appears to be a license number, and Mr. Gay's signatures appear over the words "QuikServe Oklahoma Legal Process Servers."

Having determined that the challenged affidavits may be considered, the next step is to determine whether plaintiffs did or did not have a reasonable opportunity to serve Mr. Lupp prior to removal. In that regard, the court finds the following facts established on this record.

On December 2, 2019, this action was filed in state court. Doc. no. 1-1.

On December 6, 2019, four days after this action was filed in state court, a paralegal working for plaintiffs' counsel contacted a process server to arrange for the petition and summons to be served on Mr. Lupp. Doc. no. 33-2. The email provided contact information for Mr. Lupp. *Id*. Thus, plaintiffs' counsel began efforts to serve Mr. Lupp within four days of the filing of this action.

On December 9, 2019, seven days after this action was filed in state court, a certified letter was sent by plaintiffs' attorney to TABC's attorney. The letter states that service papers for TABC are enclosed, and that based on a prior conversation plaintiffs' attorney considers TABC to have been served. Doc. no. 33-3. (Later, the same attorneys who represent TABC entered appearances on behalf of Mr. Lupp.)

On December 10, 2019, eight days after this action was filed in state court, Mr. Gay, a process server, made an unsuccessful attempt to serve Mr. Lupp at his home, at 8:07 a.m. Doc. no. 33-5. The process server knocked on the door without receiving any answers. A "field card" was left on the front door but no response to it was ever received by the process server.

On December 12, 2019, ten days after this action was filed in state court, the process server made a second unsuccessful attempt to serve Mr. Lupp at his home, at 6:59 p.m. *Id*. The process server knocked on the door of Mr. Lupp's home without receiving any answers. At that time, a white pickup truck was parked in the driveway.

On December 13, 2019, eleven days after this action was filed in state court, the process server made a third unsuccessful attempt to serve Mr. Lupp at his home, at 7:11 p.m. *Id*. The process server knocked on the door of Mr. Lupp's home without receiving any answers. At that time, the same white pickup truck was parked in the driveway.

Also on December 13, 2019, eleven days after this action was filed in state court, TABC removed this case to federal court. Doc. no. 1.

On December 14, 2019, twelve days after this action was filed in state court, the process server made a fourth unsuccessful attempt to serve Mr. Lupp at his home, at 9:02 a.m. Doc. no. 33-5.

On December 16, 2019, fourteen days after this action was filed in state court, the process server either served or attempted to serve Mr. Lupp at his home, at 5:33 p.m. Doc. no. 33-6. The process server and Mrs. Lupp had a conversation while Mrs. Lupp was in a red car located in the driveway of the home. The process server told Mrs. Lupp he was there to serve legal papers on Mr. Lupp. She declined to accept service and immediately drove away. The process server then left the papers on the front porch in a secure location.[9]

On January 8, 2020, slightly more than a month after this action was filed in state court, the process server either served or re-served Mr. Lupp at his home, at 7:24 p.m. *Id*. Plaintiffs argue they re-served Mr. Lupp on January 8, 2020 in an abundance of caution. Regardless, there is no dispute that personal service was effected on Mr. Lupp by January 8, 2020 at the latest. On that date, the process server rang the doorbell and knocked on the door, which was answered by Mr. Lupp

---

[9] The court disregards the statement in this affidavit that the process server was, "By law," able to leave documents.

9

and his wife. The process server handed the service papers to Mr. Lupp. The process server and Mr. Lupp had a conversation in which Mr. Lupp indicated he had received the papers previously left at his home. Mr. Lupp also indicated he "wasn't sure about the laws about who could accept service and that he spoke with his attorney who told him to go ahead and take the documents into his home." *Id.*

Mr. Lupp, the alleged driver of the tractor-trailer involved in the accident, is a properly joined defendant. Based on the facts recited above, plaintiffs diligently attempted to effect service on him beginning only four days after this action was filed on December 2, 2019 and continuing through and beyond the date of removal, December 13, 2019, which was only eleven days after this action was filed in state court. Although the court makes no findings regarding evasion of service, some facts set out in the process server's affidavits, along with TABC's failure to offer evidence to rebut any inference of evasion, suggest the possibility that Mr. Lupp may not have been comfortable accepting service until he spoke with his attorney and was advised it was appropriate to accept service.

In the circumstances of this case, plaintiffs did not have a reasonable opportunity to serve Mr. Lupp prior to the removal of this action by TABC. TABC's arguments to the contrary (that plaintiffs created their own problems by electing to serve TABC before they served the forum defendant, and that the sequence of events was within the control of the plaintiffs) are rejected. Given plaintiffs' inability to serve Mr. Lupp despite their diligent efforts to do so, plaintiffs did not "elect" to serve TABC before they served Mr. Lupp.

Because plaintiffs did not have a reasonable opportunity to serve Mr. Lupp prior to removal, this case comes within an exception to the "properly joined and served" language of §1441(b)(2). *See*, Flandro, *supra* (same exception applied

where plaintiffs began efforts to serve forum defendant within four days of filing case, and where non-forum defendant removed eleven days after case was filed); Snyder, *supra* (same exception applied by Judge Leonard). Because the exception urged by the plaintiffs applies, the forum defendant rule of § 1441(b)(2) operates, and the removal was improper. Accordingly, plaintiffs' motion to remand will be granted.

Plaintiffs' motion to remand also requests an award of attorneys' fees and costs. Plaintiffs argue that TABC engaged in blatant gamesmanship to win the race to remove before plaintiffs could serve Mr. Lupp. This order makes no findings regarding any argued-for gamesmanship on the part of TABC, and the court declines to award plaintiffs their attorneys' fees or costs.

The final motion before the court is defendants' motion to quash service on Mr. Lupp. Doc. no. 25. To the extent the motion includes arguments related to the motion to remand those arguments have been addressed. Furthermore, the principal purpose of the motion to quash is not to obtain remand but to keep plaintiffs from arguing that service was effective on Mr. Lupp as of December 16, 2019, in order to preclude plaintiffs from seeking a default judgment based on that purported service. *See*, doc. no. 25, p. 3 ("Instead of effectuating proper service on Mr. Lupp, Plaintiffs' process server merely left papers on Mr. Lupp's front porch. Defendants oppose any entry of default arising from Plaintiff's improper and ineffectual attempt to serve Mr. Lupp."). This order has already found that service was effected on Mr. Lupp by January 8, 2020 at the latest. In addition, Mr. Lupp filed an answer on January 21, 2020. Doc. no. 37. Accordingly, the motion to quash is moot (as movant's reply brief recognizes, doc. no. 43, p. 4) and will be stricken.

11

<u>Conclusion</u>

After careful consideration, the court rules as follows.

The American Bottling Company's motion to strike affidavits is **DENIED**. Doc. no. 42.

Plaintiffs' motion to remand is **GRANTED**. Doc. no. 33. This action is hereby **REMANDED** to The District Court of Cleveland County, State of Oklahoma. The remand is under 28 U.S.C. §1447(c) and (d), and is based on the forum defendant rule of 28 U.S.C. §1441(b)(2). The court declines to award plaintiffs their attorneys' fees or costs.

The motion to quash is **STRICKEN** as moot. Doc. no. 25.

IT IS SO ORDERED this 26th day of February, 2020.

*[Signature]*
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-1162p004.docx